UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

JOE CALVIN COOLEY                               CIVIL ACTION NO. 07-cv-1761

VERSUS                                          REFERRED TO:

U.S. COMMISSIONER SOCIAL                        MAGISTRATE JUDGE HORNSBY
SECURITY ADMINISTRATION

**MEMORANDUM RULING**

**Introduction**

Joe Calvin Cooley ("Plaintiff") filed an application for benefits based on an allegation that he became disabled on April 17, 2003 due to nerve damage from a gunshot wound caused when a rifle round passed through his left elbow and into his torso. Plaintiff was 46 years old when ALJ Osly Deramus decided the case on May 15, 2007. Plaintiff had a twelfth-grade education and past work experience that included employment as a short order cook, laborer, garbage collector, and janitor.

The ALJ assessed the claim under the five-step sequential analysis. He found that Plaintiff was not working, had residuals of the gunshot wound to the left arm and back, as well as obesity, impairments that are severe but not severe enough to meet or medically equal a listing. The ALJ then reviewed the evidence and determined that Plaintiff had the residual functional capacity ("RFC") to perform light work activity.[1]

---

[1]Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though a job may require lifting of

A vocational expert ("VE") testified that, based on the RFC for light work, Plaintiff could return to his past relevant work as a short order cook. The ALJ accepted that testimony and ended the analysis at step four.

The Appeals Council denied a request for review. Plaintiff filed this civil action seeking judicial review pursuant to 42 U.S.C. § 405(g). Both parties filed written consent to have a magistrate judge decide the case and, pursuant to 28 U.S.C. § 636(c) and the standing order of the district court governing social security cases, the action was referred to the undersigned for decision and entry of judgment. For the reasons that follow, the Commissioner's decision to deny benefits will be reversed, and the case will be remanded.

**Issues on Appeal**

The scheduling order requires an appellant to specify the issues for appeal. Plaintiff listed two: (1) An assertion that the ALJ did not fully develop the record with respect to claims of shortness of breath and chest pains; and (2) An argument that the ALJ's credibility assessment did not comply with Social Security Ruling 96-7p.

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal

---

only very little weight, it will still be classified as light rather than sedentary if it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. A person must have the ability to do substantially all of these activities to be found capable of performing the full range of light work. 20 C.F.R. §§ 404.1567(b) and 416.967(b).

standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Analysis**

The ALJ recounted that in April 2006 Plaintiff had a weak grip in his left hand and decreased sensation in some areas of his left arm, but he had a full range of motion of the wrist and elbow. Otherwise, Plaintiff was in relatively good shape with an ability to walk without problem. In July 2006, Plaintiff reported, during a clinical visit, left arm and hand numbness. He also complained of chest pain on exertion for the past six or seven month, and Plaintiff also complained of a shortness of breath. Tr. 94-95.

Dr. John McDonald performed a consultative examination in September 2006 after a physical examination of Plaintiff and reviewing available agency documents. Plaintiff's complaints, as summarized in the report, dealt with his physical problems caused by the shooting. Dr. McDonald recorded that Plaintiff "Denies any chest pain, dyspnea on exertion, shortness of breath at rest," or similar problems. Dr. McDonald found that Plaintiff had a mildly decreased range of motion of his left elbow but had adequate muscle strength in his arms. Plaintiff had mildly decreased grip strength in his left hand, but more difficulty with

certain fine motor movements. Dr. McDonald nonetheless determined that Plaintiff could perform most activities with both hands. He added that Plaintiff "should be able to sit, walk, and/or stand for a full workday, lift/carry objects of at least 20 pounds, hold a conversation, respond appropriately to questions, carry out and remember instructions." Tr. 89-91.

The ALJ held a hearing in March 2007. The transcript states that it was in 2005, but counsel for Plaintiff represents that it was really in 2007. Plaintiff appeared without counsel. He said that he was 5' 11" and weighed 230 pounds. Plaintiff described his problems with his left extremity, and he added that he had "chest pains and stuff." Plaintiff said he had been evaluated by a physician and given some nitroglycerin pills. Plaintiff said he could fix meals and do the shopping, but if he attempted yard work, he had to take his time because of chest pain. Plaintiff testified that he had to take a nitroglycerin tablet about once a week. Plaintiff said he had not used alcohol or cocaine in about eight months, but he continued to smoke less than half a pack of cigarettes a day, which was reduced because of his chest problems. Plaintiff estimated that he could lift about 30 or 35 pounds without problem, but he said he could walk only about a block before he would have to stop and rest. He estimated that he could stand for one and one-half to two hours, and he thought he could sit for about three hours before he needed to move around. Plaintiff estimated that he could climb about 15 stairs before he had to stop and rest, and he said he could climb a ladder.

The ALJ noted that the agency had medical records through July 28, 2006, and he said he understood there were other medical records from LSU-HSC. A witness said that Plaintiff

had been to the emergency room there for a couple of times in the last year, and the ALJ said that he would "put that down as a request" for the records. Tr. 126. The ALJ stated again later that he was "going to request updated records from LSU" and use those records to help make a decision. Tr. 131.

When the ALJ issued his decision in May 2007, the record did not include a discharge summary from a hospitalization at LSU-HSC from April 2007 (soon after the hearing). Plaintiff had reported to the emergency room with complaints of multiple episodes of chest pain, usually brought on by exertion while he was mowing his lawn or walking. Plaintiff also complained of shortness of breath during the episodes. He said he had a prescription for nitroglycerin, "but he states he never used it before." (This is in conflict with Plaintiff's testimony.) Plaintiff was admitted to the hospital. He had a Bruce protocol stress test, but the physicians stopped it based on their observations. They performed a left heart catheterization that showed 100% occlusion in one place. The impression was single vessel critical disease with collaterals. The notes state that a repeat adenosine stress test was performed, and it was normal. Plaintiff was discharged, with a note that he could do activities "as tolerated." He was prescribed Neurontin three times a day for his pain, as well as some other medications.

Dr. Carlos Brown performed a consultative examination in October 2007. This was several months after ALJ Deramus' decision, so it may have been performed in connection with another application. Plaintiff denied any use of tobacco at this visit, and he repeated his

claim of chest pains and shortness of breath when he walks more than one city block. Dr. Brown found that the claim was supported by the fact that Plaintiff was on medication for coronary artery disease, but he noted that Plaintiff had no difficulty walking from the waiting room and no chest pain. However, Dr. Brown wrote, "I feel that his ability to work should be limited to no walking beyond 1 block without the ability to rest." He believed that Plaintiff would be able to sit and/or stand for a full workday and perform lifting and carrying commensurate with light work. See Exhibits 2, Plaintiff's brief at Doc. 11.

Plaintiff obtained counsel in July 2007 (after the hospitalization but before the Dr. Brown evaluation). Counsel requested, and the Appeals Council granted, a 30-day extension to submit a brief or additional evidence. Tr. 8-10. A letter was filed but it did not reference or attach the April 7 discharge summary. Tr. 106-08. The Appeals Council denied the request for a review. Tr. 4.

Plaintiff's first argument is that the ALJ did not fully develop the record with respect to the shortness of breath and chest pain complaints. The record shows that the ALJ did, however, send the promised request to LSU-HSC for all medical records for Plaintiff after July 29, 2006. Tr. 102. The hospital provided some records, with one making a brief reference to keeping appointments at the Cardiology Clinic, but the discharge summary from the April 2007 hospitalization appears not to have been included. Tr. 103-05. Plaintiff's counsel says he is not certain why the discharge summary was not provided, and he adds that

he did not receive the document until after the Appeals Council denied review. Plaintiff's brief, footnote 6.

The ALJ has a duty to develop the facts fully and fairly, but reversal is appropriate only if the applicant shows that he was prejudiced. Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision. Ripley v. Chater, 67 F.3d 552, 557 (5th Cir. 1995). The absence of the discharge summary cannot be blamed on the ALJ, as he requested the medical records as promised. His request satisfied his duty to develop the record.

Plaintiff presents his argument in the alternative that the case should be remanded for consideration of new evidence in the form of the discharge summary and the evaluation report from Dr. Carlos Brown. When new evidence becomes available after the Commissioner's decision and there is a reasonable probability that the new evidence would change the outcome of the decision, a remand is appropriate so that this new evidence can be considered. Ripley, 67 F.3d at 555. However, a remand is justified only if the claimant makes a showing of good cause for failing to provide this evidence during the original proceedings. Id. Evidence is not material for purposes of a remand unless it "relates to the time period for which disability benefits were denied." Id. Furthermore, evidence is not material if it relates "to the deterioration of a previously non-disabling condition resulting

after the period for which benefits are sought." Id. at 555 n. 14. See also Joubert v. Astrue, 287 Fed. Appx. 380, 383 (5th Cir. 2008).

The discharge summary relates to a hospitalization one month after the hearing and before the ALJ decided the claim, so it relates to the relevant time period. Dr. Brown's evaluation does not specifically state that it assesses Plaintiff's condition before the ALJ's decision, but Dr. Brown's walking limitation is based almost wholly upon the diagnosis of coronary artery disease that was made during the relevant time period. As for good cause, it appears that the hospital did not produce the record to the agency when requested, and the record did not find its way to counsel until after it could have been used in the agency proceedings. Exactly what happened cannot be determined from this record, but the court is satisfied that there is good cause for not presenting the document earlier. Counsel is an experienced Social Security litigator and undoubtedly would have filed the favorable report immediately if it had been produced to him earlier.

Finally, there is a reasonable probability that the new evidence would change the outcome of the decision. The ALJ paid little attention to the shortness of breath complaints, and the hospitalization record would tend to make the ALJ devote more attention to this complaint. The diagnosis of coronary artery disease persuaded Dr. Brown to impose a significant limitation on walking that would interfere to some extent with light work. Other physicians may have different opinions, and the ALJ may in the end not be persuaded that Plaintiff has such a limitation, but there is at least a reasonable probability that he would be.

The better course is to remand this case so that an ALJ, well versed in deciphering medical records, may review the LSU-HSC discharge summary, consider the weight and relevance of Dr. Brown's opinion, and determine whether additional consultations or evidence would help flesh out the claims. Based on this resolution, there is no need to address Plaintiff's arguments regarding the credibility assessment. A judgment will be entered in accordance with this ruling.

      THUS DONE AND SIGNED in Shreveport, Louisiana, this 29th day of January, 2009.

                                                  MARK L. HORNSBY
                                       UNITED STATES MAGISTRATE JUDGE